IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ROBERT J. SUDDS                                                                                          PLAINTIFF

        v.                              Civil No. 11-2257

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                                      DEFENDANT

**MEMORANDUM OPINION**

        Plaintiff, Robert Sudds, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.     Procedural Background:**

        The plaintiff filed his applications for DIB and SSI on December 17, 2009, alleging an onset date of December 10, 2009, due to suicide attempts, depression, and mood swings. Tr. 119-120, 128-131, 179. His claims were denied both initially and upon reconsideration. Tr. 60-62, 63-66, 72-73, 74-76. An administrative hearing was then held on October 6, 2010. Tr. 24-55. Plaintiff was present and represented by counsel.

        At the time of the hearing, Plaintiff was 37 years of age and possessed an eighth grade education. Tr. 30, 32, 42 . He had previously worked in the freight industry and at various temporary jobs. Tr. 187-194.

        On February 15, 2011, the Administrative Law Judge ("ALJ") concluded that, although severe, Plaintiff's organic brain syndrome and personality disorder did not meet or equal any Appendix 1 listing. Tr. 11-13. The ALJ determined that Plaintiff maintained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels; could understand, remember, and carry out simple,

routine, and repetitive tasks wherein the complexity of the learned and performed by rote; could respond appropriately to supervision that is simple, direct, and concrete; and, could respond to co-workers and usual work situations. However, he found Plaintiff could have no contact with the general public, and could only perform low stress work (defined as occasional decision making and occasional changes in workplace settings). Tr. 13-15. With the assistance of a vocational expert, the ALJ then found that Plaintiff could perform work as a patcher, bench assembler, and hand packager. Tr. 17.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on December 6, 2011. Tr. 1-3. Subsequently, Plaintiff filed this action. ECF No. 1. This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. ECF No. 11, 12.

## II. Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If we find it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

### A. **The Evaluation Process**:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § § 404.1520, 416.920 (2003).

### III. Discussion:

Of particular concern to the undersigned is the ALJ's failure to properly evaluate Plaintiff's claim of mental retardation under listing 12.05. Listing 12.05C states as follows:

> Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during

AO72A
(Rev. 8/82)

>
> developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements of A, B, C, or D are satisfied.

Plaintiff contends that he meets the requirements of subsection C, which states:

> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

In November 2010, Dr. Patricia Walz conducted a mental status exam, complete with IQ testing. Plaintiff scored as follows: Verbal Comprehension score of 63 (extremely low); perceptual reasoning score of 67 (extremely low), working memory score of 89 (low average), processing speed score of 89 (low average), and a full scale IQ of 71. Confusingly, Dr. Patricia Walz seems to have diagnosed him with both borderline intellectual functioning and mild mental retardation. And, the evidence indicates that Plaintiff has only an eighth grade education and is illiterate. He also has a significant criminal history with convictions related to drug possession and use, aggravated battery with a firearm, and theft, including a 30 day stay in juvenile detention for an aggression related offense. Tr. 298-307. Further, he was diagnosed with a variety of mental impairments to include major depressive disorder with multiple suicide attempts, impulse control disorder, intermittent explosive disorder, schizoaffective disorder, and antisocial personality traits. Tr. 279-288, 298-307, 349-356, 358-359, 362-363, 368-372, 376-386. Although all of these diagnoses were not found to be severe by the ALJ, he did conclude that Plaintiff's organic brain syndrome and personality disorder were severe impairments that significantly impacted his ability to perform work-related tasks. Therefore, because the evidence does at least suggest the possibility of mental retardation, this matter must be remanded to the ALJ for a determination as to whether or not Plaintiff met the requirements of listing 12.05.

4

Should the ALJ determine that Plaintiff does not meet the requirements of listing 12.05, he is directed to reassess Plaintiff's intellectual functioning (whether it be mild mental retardation or borderline intellectual functioning) and illiteracy at step two of the sequential process. *See Hunt v. Massanari*, 250 F.3d 622, 625-26 (8th Cir. 2001) (diagnosis of borderline intellectual functioning should be considered severe when the diagnosis is supported by sufficient medical evidence); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998) (ALJ is required to discuss illiteracy and how it might impact Plaintiff's work abilities). Both should also be included in the hypothetical question posed to the vocational expert.

### IV.   Conclusion:

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 16th day of January 2013.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE